J-S14016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE ADOPTION OF: R.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | |
| AND C.D., MOTHER | : | No. 1493 WDA 2021 |

Appeal from the Decrees Entered November 19, 2021
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  No. 34 Adopt 2021

BEFORE:     McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: SEPTEMBER 6, 2022**

R.S. (Father) and C.D. (Mother) (collectively, Parents) appeal together

from the decrees entered in Fayette County Court of Common Pleas, Orphans'

Court, involuntarily terminating their parental rights to their son, R.S. (Child),

born in February 2020.[1]    Consistent with this panel's June 15, 2022,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although the orphans' court issued separate decrees, counsel filed one notice of appeal on behalf of the Parents.  However, as both Parents' decrees were issued under the same trial docket, **_Commonwealth v. Walker_**, 185 A.3d 969 (Pa. 2018), is not implicated.  **_See Walker_**, 185 A.3d at 977 ("Rule 341(a) . . . require[s] that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.").

Additionally, we note Counsel does not raise any issue concerning his representation of both parents, who are not married and appear to be living separately.  While Subsection § 2313(a.1) of the Pennsylvania Adoption Act provides, "The court shall appoint counsel for **a parent** . . . in an involuntary termination proceeding if . . . the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship," *(Footnote Continued Next Page)*

memorandum, Parents' attorney, James Natale, Esquire (Counsel), has filed an amended petition to withdraw and amended brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).[2]  After careful review, we grant the petition to withdraw and affirm the termination decrees.

## I.  Facts & Procedural History

Child was born in February 2020 and tested positive for opiates, fentanyl, and cocaine.  N.T., 10/14/2021, at 3.  Upon CYS' petition, Child was adjudicated dependent on February 13th, when he was less than two weeks

_____

the statute is silent as to whether each parent is entitled to separate counsel when both parents' rights are subject to termination.  ***See*** 23 Pa.C.S. § 2313(a.1) (emphasis added).  We have also not discovered any case authority addressing this particular question.  ***But see In re K.R.***, 200 A.3d 969, 984 (Pa. Super. 2018) (*en banc*) (where a child's **legal** and **best** interests do not diverge in a termination proceeding, an attorney-guardian *ad litem* may represent both; but where there is a conflict between a child's legal and best interests, a GAL cannot simultaneously represent both, and a separate attorney shall be appointed to represent the child's legal interests).

[2] In our June 15, 2022, memorandum, we denied Counsel's initial request to withdraw from representation, on the ground his brief failed to address Subsection 2511(b), which concerns the child's best interests.  Counsel filed the instant amended ***Anders*** petition and brief on July 8th.

In response to the amended ***Anders*** brief, Fayette County Children and Youth Services (CYS) has filed a "Supplemental Brief."  Child's guardian *ad litem*, Meghann Mikluscak, Esquire (GAL), has not filed a responsive brief, although we note she previously joined the initial brief filed by CYS, and recommended this Court should affirm the termination of Parents' parental rights.

old, and placed with a foster family, where he has since remained. *Id.* at 3-8.

> CYS established the following permanency plan goals for Parents:
>
> Cooperation with [CYS], mental health evaluation, and treatment, if necessary, drug and alcohol evaluation and recommended treatment, parenting classes, maintain a bond with [C]hild through visitation, and domestic violence counseling.

Orphans' Ct. Op., 2/14/2022, at 2. CYS established the domestic violence goal due to Mother, in February of 2020, having a "baseball size section" of hair missing and her allegation that Father ripped it out while he was high. N.T., 10/14/2021, at 6.

As we discuss in detail *infra*, throughout Child's dependency, Parents did not cooperate with efforts made by CYS and other service providers. N.T., 10/14/2021, at 13. Parents visited Child sporadically and, during the COVID-19 pandemic, refused to schedule virtual visits. *See id.* at 21. Their last visit with Child occurred on July 30, 2021. N.T., 11/19/2021, at 29. Parents also failed to complete a drug and alcohol program and a domestic violence program. N.T., 10/14/2021, at 18-19, 24. Finally, Parents failed to meet their mental health-related goals. CYS received records for Father from Connellsville Counseling, where he had an evaluation but was unsuccessfully discharged due to non-compliance. N.T., 11/19/2021, at 14. Mother claimed she also went to Connellsville Counseling, but she did not sign a release for CYS to confirm this. *Id.*

On April 28, 2021, when Child was almost fifteen months old, CYS filed petitions for the involuntary termination of Parents' parental rights pursuant to Subsections 2511(a)(1), (2), (5), (8), and (b). As stated above, Parents' last visit occurred on July 30, 2021.

The orphans' court conducted evidentiary hearings on October 14 and November 19, 2021. At this time, Child was 20 months old and was represented by Attorney Mikluscak, the GAL.[3] Parents were represented by Counsel and appeared at the first hearing only. Counsel requested a continuance of the second day of hearing, stating he intended to call Parents to testify. N.T., 11/19/2021, at 2, 49. The court denied a continuance, as Counsel acknowledged Parents had notice of the hearing. *Id.* at 2-3.

CYS presented the testimony of four caseworkers involved in this matter, as well as employees of the Fayette County Drug and Alcohol Commission. Parents did not testify. However, Father's second cousin, who adopted Father's older child and has hosted and supervised parental visits, testified as Parents' only witness.

---

[3] We note the orphans' court did not appoint separate legal counsel for Child. *See In re T.S.*, 192 A.3d 1080, 1092-1093 (Pa. 2018) ("[I]f the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and . . . best interests; as such, the mandate of Section 2313(a) [(that counsel be appointed "to represent the child)] is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests[.]"

At the close of the November 19, 2021, hearing, the orphans' court granted CYS' petitions to terminate Parents' parental rights pursuant to Subsections 2511(a)(1), (2), (5), (8), and (b). Parents filed a timely notice of appeal and Pa.R.A.P. 1925(a)(2)(i) concise statement of errors complained of on appeal.

## II. *Anders* Petition to Withdraw & Brief

On March 11, 2022, Counsel filed an *Anders* petition and brief to withdraw. As stated above, on June 15, 2022, this panel denied Counsel's petition and ordered Counsel to either file a compliant *Anders* brief or an advocate's brief, which addressed, *inter alia*, Subsection 2511(b). Counsel filed the instant amended *Anders* petition to withdraw and brief on July 8th.

We begin by reviewing Counsel's request. This Court has explained:

When counsel files an *Anders* brief, this Court may not review the merits without first addressing counsel's request to withdraw. [T]his Court [has] extended the *Anders* principles to appeals involving the termination of parental rights. . . .

*In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014) (citations omitted).

In *Santiago*, our Supreme Court held:

[I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 5 -

> Additionally, . . . "[c]ounsel also must provide a copy of the ***Anders*** brief to his client[, along with] a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief."
>
> "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous."

***In re X.J.***, 105 A.3d at 3-4, *quoting*, *inter alia*, ***Santiago***, 978 A.2d at 361.

Instantly, Counsel's amended petition to withdraw avers he made a thorough review of the record and has determined Parents' appeal would be frivolous. Counsel's Petition to Withdraw as Counsel, 7/8/22, at 2 (unpaginated). Counsel attached to the petition letters he sent to Parents advising of their rights to retain new counsel or proceed *pro se*, and to raise any points they deem worthy of this Court's attention. Furthermore, Counsel's amended brief includes: a summary of the procedural history and facts of the case, with citations to the record; the issues raised by Parents that could arguably support the appeal; and Counsel's assessment of why the appeal is frivolous, with discussion of relevant legal authority. Pertinently, Counsel's amended brief addresses the statutory grounds for termination under both Subsections 2511(a) and (b). In light of the foregoing, we conclude Counsel has complied with the technical requirements of ***Anders*** and ***Santiago***.

- 6 -

### III.  Independent Review of the Record

We next conduct an independent review of the record to determine whether this appeal would be, in fact, wholly frivolous.  ***See In re X.J.***, 105 A.3d at 4.  We note Counsel's ***Anders*** brief raises the following issue:

> Did the lower court abuse its discretion in terminating the parental rights of [Father and Mother], as [CYS] failed to present sufficient evidence to sustain its burden of proof?

Amended ***Anders*** Brief at 3.

We note the standard of review of a ruling on the involuntary termination of parental rights:

> [A]ppellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence.  This standard of review corresponds to the standard employed in dependency cases, and requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but it does not require the appellate court to accept the lower court's inferences or conclusions of law.  . . .  An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion; we reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will."  . . .  "We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings."  However, "[w]e must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence."

***In re Adoption of C.M.***, 255 A.3d 343, 358-59 (Pa. 2021) (citations omitted).

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of their child with the "child's essential needs for

a parent's care, protection, and support." **C.M.**, 255 A.3d at 358. The court

must separately consider Subsections 2511(a) and (b):

> Termination of parental rights is controlled by statute. **See** 23 Pa.C.S.A. § 2511[.] Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).
>
> Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

**In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007) (some citations omitted &

paragraph break added).

> Our Supreme Court has explained:
>
> [T]he burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of the statutory grounds for doing so. "[C]lear and convincing evidence is defined as testimony that is so 'clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'"

**Adoption of C.M.**, 255 A.3d 343 at (citations omitted). To affirm a

termination of parental rights, we need only agree with the trial court as to

any one subsection of Section 2511(a), as well as Section 2511(b). **In re**

**B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The orphans' court terminated Parents' parental rights pursuant to Subsections 2511(a)(1), (2), (5), (8), and (b). We consider the termination decrees pursuant to Section 2511(a)(2) and (b), which provide:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With regard to termination under Section 2511(a)(2), we have stated:

> [T]he following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

- 9 -

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal[,] as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (citation omitted).

> "[W]hen a parent has demonstrated a continued inability to conduct [their] life in a fashion that would provide a safe environment for a child, whether that child is living with the parent or not, and the behavior of the parent is irremediable as supported by clear and competent evidence, the termination of parental rights is justified." "A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous."

*Id.* at 1105 (citation omitted).

> In the instant case, the orphans' court determined:

> [P]arents have failed the family service plan in every respect . . . Parents have not addressed obvious problems of drug usage and correlated domestic violence. Parents have never met the present caseworker and rarely spoke to prior caseworkers. Parents were unsuccessfully discharged from drug and alcohol treatment as well as mental health treatment for noncompliance. The only item completed on the family service plan was parenting classes and Mother was observed as impaired during those classes online. . . .

Orphans' Ct. Op. at 8. The court concluded:

> [P]arents have repeatedly and continuously engaged in an incapacity to care for [Child] and . . . the failure to care and bond with [Child] shows gross incapacity . . . and neglect. Further, [P]arents' conduct causes [Child] to be without essential parental care, control, and subsistence necessary for his physical and

- 10 -

mental wellbeing[,] and [Parents'] conduct will not be remedied by [them]. . . .

*Id.*

Our review of the record supports the orphans' court's findings. Throughout the dependency, Parents did not cooperate with efforts made by CYS and other service providers. CYS caseworker Jennifer Guseman testified to the following: Justice Works was a service provider for CYS and was to perform random drug screens. *See* N.T., 10/14/2021, at 13. Justice Works made 111 attempts to contact Parents at their home from June 25, 2020, to February 18, 2021, but only made direct contact with Parents 42 times. N.T., *Id.* at 13-14. When contact was made, Parents refused to submit to drug tests. *Id.* at 14. After February 18, 2021, Justice Works discontinued drug testing services with Parents because of their lack of cooperation. *Id.* CYS also requested Parents obtain hair tests for drug and alcohol. *Id.* at 25. Caseworker Guseman scheduled testing on four separate occasions for each Parent from October of 2020 to February of 2021, but Parents failed to appear for the tests. *Id.*

Similarly, CYS caseworker Jessica Provance testified that each time she visited with Parents from March through July 2021, she attempted to have them drug tested, but was unsuccessful. N.T., 11/19/2021, at 12. Additionally, although Parents agreed to hair testing and Caseworker Provance scheduled four tests between March and July 2021, Parents did not attend any. *Id.* at 13.

The record also shows that Parents inconsistently visited Child. Caseworker Guseman testified that from February of 2020 to February of 2021 (the first year of Child's life), there were 76 scheduled visits at Justice Works, but Parents only attended 36 visits. N.T., 10/14/2021, at 21. On some of these 36 visits, only Mother or only Father appeared, and on more than one occasion, Parents appeared impaired.[4] *Id.* at 22-23. Caseworker Provance likewise testified that Parents were inconsistent with visitation between March and August 2021. N.T., 11/19/2021, at 26-29. She testified that Parents' last visit occurred on July 30, 2021, more than two months before the first termination hearing, and that Parents missed eight visits in August 2021. *Id.* at 28-29.

Parents also failed to meet their mental health goals. CYS received records for Father from Connellsville Counseling, where he had an evaluation completed but was unsuccessfully discharged due to non-compliance. N.T., 11/19/2021, at 14. Mother claimed she also went to Connellsville Counseling, but she did not sign a release for CYS to confirm this. *Id.*

Additionally, Parents did not complete their drug and alcohol goal. N.T., 11/19/2021, at 11. County Drug & Alcohol Commission staff member Stacey Valenta testified that Mother completed an intake on November 4, 2020, and

---

[4] Caseworker Guseman stated she was not sure how often Parents appeared impaired for visits, but stated that it happened more than once. N.T., 10/14/2021, at 22-23.

six treatment sessions were scheduled. *Id.* at 5. However, Mother did not attend any. *Id.* Due to non-compliance, the Commission discharged her. *Id.* at 6. Father twice scheduled an intake with the Commission, for November 24 and December 29, 2020, but he missed both appointments and did not reschedule. *Id.* at 8.

Furthermore, the record indicates that Parents did not attend **domestic violence** classes. N.T., 10/14/2021, at 7, 24. Caseworker Guseman testified that Parents did attend online **parenting** classes *via* the Crime Victim Center. *Id.* at 24. However, the facilitator of the class noted that she observed Mother to be under the influence on various occasions. *Id.*

Based on the foregoing, we discern no abuse of discretion by the orphans' court in concluding Parents' conduct warranted termination pursuant to Section 2511(a)(2). The record demonstrates that Parents' repeated and continued incapacity, neglect, or refusal to comply with their permanency goals, as well as failure to resolve their mental health and drug issues, have caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. *See* 23 Pa.C.S. § 2511(a)(2); *Adoption of M.E.P.*, 825 A.2d at 1272. Further, the conditions and causes of Parents' incapacity, neglect, or refusal cannot or will not be remedied. *See id.*

We next consider Subsection 2511(b).

"Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and

emotional needs and welfare of the child." . . . "Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis."

*In re K.R.*, 200 A.3d at 982 (citation omitted).

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*Id.* (citation omitted). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). A court should also consider "whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights." *Interest of L.W.*, 267 A.3d 517, 524 (Pa. Super. 2018).

In addition, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013). Finally, our Supreme Court has stated: "In weighing the difficult factors discussed above, courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly." *Id.* at 269.

Here, the orphans' court found that Child's pre-adoptive family has "provided [Child] with love, care, and nurture. They intend to adopt [Child] and will continue to provide a stable and healthy environment in order for [him] to grow and develop with his family, the only family he has ever known. To break this bond would be against his emotional and physical well-being." Orphans' Ct. Op. at 9.

The record supports the orphans' court conclusion that termination was proper under Subsection 2511(b). Caseworker Provance testified that Parents did not adequately watch Child during visits, often left the visits to smoke, and were often "on" their phones. N.T., 11/19/2021, at 28. On one occasion, Child put chalk in his mouth and the Justice Works worker had to redirect because had Mother stepped away from Child. *Id.* On another occasion, the Justice Works staff member had to redirect Mother because she stepped away and did not see that Child had climbed toward the steps of the home. *Id.* CYS was concerned by Parents' "lack of motivation to engage with [Child]." *Id.* Child was "more interested with the Justice Works worker than [Parents]." *Id.*

The testimony also supported a finding that Child does not have a bond with Parents. Caseworker Guseman testified that Child had no problems separating from Parents after visits. N.T., 10/14/2021, at 23. Caseworker Provance also testified she did not notice any bond between Parents and Child, and she was unaware of Child having any adverse reactions when separating

from Parents. N.T., 11/19/2021, at 28. Even Parents' only witness, D.K., Father's second cousin, testified, "Sometimes [Child] didn't really know [Parents]. If there was a long time in between visits, just like a child coming into daycare when they first come in, [the child is] upset, but after they're with the parents for a while then they relax and get comfortable." *Id.* at 44.

Finally, Caseworker Provance testified that Child was placed with his current pre-adoptive family shortly after he was born, and they were the only family Child has ever known. N.T., 11/19/2021, at 29. CYS caseworker Jessica Roberts testified that Child's pre-adoptive family intends to adopt Child. *Id.* at 37. On this record, we conclude the orphans' court did not abuse its discretion in finding termination of Parents' parental rights was consistent with Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

In light of the foregoing, our independent review of the certified record reveals no non-frivolous issue that would arguably support Parents' appeals. Therefore, we grant Counsel's petition to withdraw from representation, and affirm the decrees terminating both Parents' parental rights pursuant to Subsections 2511(a)(2) and (b).

Counsel's petition to withdraw granted. Decrees affirmed.

Judge Pellegrini joins the Memorandum.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2022